Robert Justin DRISCOLL, Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 02PDJ031.

Office of the Presiding Disciplinary Judge
of the Supreme Court of Colorado.

Sept. 29, 2003.

Attorney Regulation. Robert Justin Driscoll, attorney registration number 05729 was reinstated to the practice of law effective September 29, 2003.

Opinion Issued by Presiding Disciplinary Judge ROGER L. KEITHLEY and Hearing Board Members WILLIAM R. GRAY and DAVID A. HELMER, both members of the Bar.

## OPINION AND ORDER REINSTATING ROBERT JUSTIN DRISCOLL TO THE PRACTICE OF LAW

### ATTORNEY REINSTATED TO THE PRACTICE OF LAW

On October 7, 8 and 9, 2002, a Reinstatement Hearing was held pursuant to C.R.C.P. 251.29(d), which was subsequently continued to July 29 and 30, 2003. Both the initial and the continued Reinstatement Hearing were held before a Hearing Board consisting of the Presiding Disciplinary Judge ("PDJ") and two Hearing Board members, William R. Gray and David A. Helmer, both members of the Bar. John Astuno, Jr., appeared on behalf of petitioner Robert J. Driscoll ("Driscoll") who was also present. Kim E. Ikeler, Assistant Regulation Counsel, represented the People of the State of Colorado (the "People").

The following witnesses testified on behalf of Driscoll: Michael W. Meyrick, Eugene Romero, Rev. John McKenna, Rev. George Salazar, Kevin Driscoll, Richard Waltz, Caroline Driscoll, Claire Driscoll, Will Shanahan Driscoll, J. Michael Dowling, Brandon Marinoff, Thomas Vine, Clifford Beem, Catharine Bull, Brett Davies, Divonna Anothony, Antoinette L. Anker, PhD, Ray Velarde, Lisa Oppenheimer, Joseph St. Veltri, Donald Masters, Jr., Joseph Abraham, Jr. and Brian Foster. Driscoll also testified on his own behalf. Jonathan Ritvo, M.D., testified on behalf of the People.

Driscoll's exhibits 1, 4, 5, 6, 7, and 8 were admitted into evidence, and the People's exhibits A, B, C, and D were admitted into evidence. The Hearing Board considered the argument and exhibits admitted, assessed the credibility of the witnesses, and made the following findings of fact which were established by clear and convincing evidence.

## I. FINDINGS OF FACT

Robert Justin Driscoll has taken the oath of admission, was admitted to the Bar of the Supreme Court on October 16, 1974, and is registered under attorney registration number 05729.

Driscoll has a prolonged history of discipline. He received a letter of admonition in 1982 for failing to give sufficient attention to his client's legal matter which resulted in their being evicted from their home. He received a second letter of admonition in 1985 for failing to execute a written stipulation on behalf of the client after having entered into an oral agreement to do so. In February 1986, Driscoll was publicly censured for neglect of several client matters occurring between 1980 and 1982. *People v. Driscoll,* 716 P.2d 1086, 1088 (Colo.1986). He was suspended for three years in 1992, *People v. Driscoll* 830 P.2d 1019 (Colo.1992), and in 1993 received a letter of admonition.

The public censure matter, *People v. Driscoll,* 716 P.2d 1086 (Colo.1986) involved several clients. In one matter, Driscoll failed to timely provide interrogatories to the client resulting in the court's dismissing the action. The client was assessed costs in connection with the dismissal. Driscoll was also found to have charged the client an unreasonable fee. In a second matter, Driscoll represented another client in three related criminal matters including transportation, sale and possession of contraband. While attempting to prepare for trial, Driscoll received cocaine from friends of the client and used it himself, which, along with Driscoll's use of alcohol, was found to adversely affect his representation of the client. In a third matter, Driscoll represented five plaintiffs in a civil action. Without the clients' knowledge or consent, Driscoll entered into a settlement on the client's behalf. When informed of the settlement, the clients refused to accept it and discharged Driscoll, who thereafter did not promptly return the clients' files. Driscoll failed to communicate with the clients after being discharged. He also wrote two checks aware that there were insufficient funds in the account to pay them. Driscoll did not respond to the then Office of Disciplinary Counsel. In a fourth matter, Driscoll was retained by a client to represent him regarding criminal charges. The client paid $3,000 to Driscoll, who thereafter failed to appear for the advisement, failed to file a written advisement with the court to obviate the need for the client's appearance, and failed to obtain a preliminary hearing date. When the client terminated the representation, Driscoll tendered only $300 to the client's newly obtained counsel. Driscoll was ordered to make restitution plus interest at the rate of eight percent per annum and pay the costs of the disciplinary proceedings within two years of the date of the order. The Court found that Driscoll's conduct was attributable to a serious condition of addiction to cocaine and alcohol.

Following the public censure, Driscoll made efforts to participate in comprehensive rehabilitation programs and obtained medical treatment. However, in the fall of 1989, Driscoll began using cocaine and alcohol again. He entered a one-month inpatient drug rehabilitation program in February 1990. The following year, in January, 1991, the then Office of Disciplinary Counsel and Driscoll entered into a Joint Stipulation and

Agreement ("Joint Stipulation").[1] The conditions of the Joint Stipulation were to remain in force until the appropriate health professional advised that the conditions were no longer necessary. The Joint Stipulation was made an Order of the Supreme Court on January 17, 1991. Driscoll complied with the terms of the Joint Stipulation during the next eighteen months during the pendency of another disciplinary action.

The following year, on June 1, 1992, the Colorado Supreme Court resolved the pending disciplinary action and issued its opinion. *See People v. Driscoll* 830 P.2d 1019 (Colo. 1992). That disciplinary action arose from Driscoll's representation of Derick Kroener ("Kroener") regarding two assault cases. Kroener agreed to pay Driscoll a certain sum as a retainer and an additional sum for the purpose of obtaining a bond. Kroener's father paid the retainer and sent an amount for the bond, requesting that if the bond were reduced Driscoll would return any unused amount. The bond was reduced and Driscoll did not return the unused amount; rather, he cashed the check without depositing it into his operating account or trust account. Driscoll then prepared an affidavit for Kroener to sign stating that he authorized Driscoll's use of the funds, and threatened to withdraw from representation if Kroener did not sign it. Additionally, Driscoll wrote forty-one insufficient funds checks on his business account. All of the checks were ultimately paid in full.[2]

The Supreme Court suspended Driscoll from the practice of law for a period of three years, taking into consideration both his prior discipline and continuing substance abuse problems. *Driscoll* 830 P.2d at 1023. The

effective date of the suspension was July 1, 1992. As conditions of reinstatement, the Supreme Court stated:

> [T]he respondent shall comply with C.R.C.P. 241.22(b)-(d),[3] and with [the Supreme Court's] order of January 17, 1991 [approving the Joint Stipulation] before he may be reinstated. It is further ordered that the respondent shall pay restitution to Kroener's father pursuant to the terms of the stipulation heretofore noted. The respondent shall pay the costs of these proceedings, in the amount of $297.41, within thirty days after the announcement of this opinion to the Supreme Court Grievance Committee.

830 P.2d at 1023.

As required, Driscoll filed an affidavit of compliance with the predecessor of C.R.C.P. 251.28 on August 19, 1992. Driscoll completed his payment of restitution to Mr. Kroener's father in October 1995. Although Driscoll did not pay the costs of the disciplinary action in the amount of $297.41 within thirty days as required by the Court's Order, the costs were paid. Additionally, Driscoll did not comply with that portion of the June 1, 1992 Order requiring him to comply with the Court's January 17, 1991 Order enforcing the Joint Stipulation.[4]

During the time frame of Driscoll's disciplinary actions—1982 through 1993—Driscoll experienced cycles of alcohol and cocaine dependency and intermittent periods of sobriety. During that time, he voluntarily entered several inpatient recovery programs. He remained abstinent throughout 1993, but began using alcohol again in 1994.

---

1. The Joint Stipulation required Driscoll to remain indefinitely active in Alcoholics Anonymous and Cocaine Anonymous, continue psychotherapy and urine monitoring for the duration of his practice, required his psychotherapist and other health professionals to file periodic reports with the then Office of Disciplinary Counsel addressing Driscoll's compliance with the conditions of the Joint Stipulation, and advised the health professionals to report immediately to the Office of Disciplinary Counsel any evidence that Driscoll was using alcohol or illegal substances.

2. Driscoll received a subsequent letter of admonition on July 21, 1993, presumably for conduct

occurring prior to his suspension, although the letter does not specify the time frame giving rise to the admonition, *i.e.,* failing to communicate with a client following his sentencing in a criminal case.

3. The predecessor to C.R.C.P. 251.28.

4. Driscoll erroneously believed that the Joint Stipulation only applied to him if he were practicing law. The Joint Stipulation applied to Driscoll regardless of whether he was actively practicing law.

Around the time that he would have been eligible to apply for reinstatement, in November 1995, Driscoll was arrested for driving under the influence in Arapahoe County. He initially contested the charges on technical grounds but, just before trial in early 1997, pled guilty. His license was suspended for thirty days, he received eight points, he was placed on probation, and he paid several hundred dollars in fines. Over the next five years, despite unsuccessful attempts to stop, he repeatedly used alcohol and cocaine. In 1998, he was arrested for attempting to purchase crack cocaine from an undercover police officer in New Mexico. Following his arrest for driving under the influence, Driscoll decided not to apply for reinstatement to the practice of law in Colorado: he believed he would never be in control of his drinking and thought it would be fruitless to even apply.

Following his suspension, Driscoll built a home in New Mexico and successfully ran a ranch, raising sheep and training polo ponies. He also sought and obtained employment in Denver as an investigator and paralegal.

In January of 2000, Driscoll "hit bottom," finding himself in dire circumstances as a result of his use of alcohol and cocaine. His sobriety dates from January 4, 2000. Since that date, he has remained committed to sobriety. Approximately one year later, he decided to pursue reinstatement to the practice of law in Colorado.

Driscoll sat for and passed the February 2002 Multistate Bar Exam and the August 2002 Professional Responsibility Exam. The parties stipulated that Driscoll has complied with continuing legal education requirements and has established professional competency in law. The PDJ approved the parties' stipulation on September 23, 2002, stating in part that Driscoll "is found to be in compliance with professional competence and Continuing Legal Education requirements for the purpose of his application for readmission to the practice of law pursuant to C.R.C.P. 251.29(c)(5)."

In addition to passing the Colorado bar exam, Driscoll has worked in the legal profession as an investigator and paralegal. Driscoll has kept abreast of the law by reading case law, disciplinary cases, ethics opinions, and other legal publications and attending continuing legal education seminars. Driscoll is well respected by the attorneys with whom he works. He has aptly handled sensitive issues in his investigative work and his research.

The Supreme Court found that Driscoll's misconduct "was attributable to a serious condition of addiction to cocaine and alcohol." *Driscoll*, 716 P.2d at 1088. Driscoll is now deeply committed to AA, not only attending meetings but also participating in community outreach programs. He meets with a sponsor every week and attends five to eight meetings per week during the four weekdays he is in Denver. Driscoll attends meetings of the Colorado Concerned Lawyers Support Group. He attends weekly meetings with his AA sponsor, assists others as an AA sponsor. Driscoll has participated in New Genesis, offering shelter and programs to the homeless, working with addiction groups. Driscoll mentors the participants in the program two to three times a week, instructing them on how to avoid situations which trigger stress. He regularly talks with the participants about his own failings, encouraging them to have hope of recovery. Driscoll's sponsor in AA, who meets with him on a weekly basis, affirmed that Driscoll is now genuinely committed to his sobriety. Driscoll is involved in the Nightwatch program, which involves taking calls on a community outreach hotline for alcoholics. He handles funds, keeps the books for the group, pays the bills and does other administrative tasks. He has a reputation for scrupulous honesty. Additionally, Driscoll counsels other professionals in the local community experiencing problems with substance abuse.

Driscoll has worked to address underlying issues contributing to the cycle of self destructive behaviors resulting in a favorable prognosis for continued abstinence. While under the influence of alcohol and drugs, Driscoll was shocked that the Supreme Court suspended his license for a three-year period. Now he views the suspension as a "great gift" because he could not previously accept his problem. Driscoll stated that on a daily basis "he is trying to save his life." As long

as he stays in AA, he will maintain his commitment to sobriety.

Driscoll voluntarily submitted to random urine testing for a period of nine months prior to the second hearing to establish his sobriety at the hearing. At no time during this period did the urinalysis show alcohol or drug use. He also submitted to two hair sample tests tested negative for drug and alcohol use. He continues to attend weekly group therapy in addition to his regular AA meetings.

Jonathan I. Ritvo, M.D. initially examined Driscoll on July 25, 2002 and conducted a subsequent evaluation on April 22, 2003. Ritvo opined that Driscoll suffers from alcohol and cocaine dependence, both currently in sustained full remission. Driscoll's misconduct in the practice of law resulted from substance dependence. He is fully capable of practicing law as long as his substance dependence remains in remission. Driscoll's present remission shows several positive prognostic features not evident in his previous remissions: (1) the current remission was initiated by a "hitting bottom experience" rather than compliance with external pressure; (2) it is marked by a sincere, uncompelled involvement with and shift in attitude toward AA, and (3) it is accompanied by rediscovery of old abandoned interests and activities.

Divonna Anthony, qualified as an expert in the field of addiction therapy, affirmed that Driscoll is sincere regarding his recovery, and that the period of time from his last use of alcohol or cocaine increases the probability of a sustained recovery. Driscoll has demonstrated full rehabilitation from substance abuse. He has taken crucial step by closing the door to using alcohol or cocaine, regardless of whether he is restored to the practice of law in Colorado.

Driscoll is well-respected in his community in New Mexico. For over a twelve-year period, he has treated his employees on his ranch well and has regularly paid his bills. He participates actively in his church. He is known through his church to help other people suffering from addictions. He has helped young people deal with alcoholic relatives. Driscoll has openly admitted to members of his church and community that he is a recovering alcoholic and substance user.

Driscoll has been married to his second wife for nearly twenty years. Members of Driscoll's family observed a marked change since January 2000 in his behavior. After having been estranged from members of his family for many years while using alcohol and cocaine, Driscoll attended his mother's eightieth birthday in 2000 and atoned to his family for his estrangement from them. Driscoll has two children from his first marriage, both who have finished college. He began developing a stronger relationship with his children since January 2000.

Members of the local legal community without exception, confirm that Driscoll no longer poses a threat to the public or the bar. While working as an investigator and paralegal, Driscoll has been trusted to accept fees from clients and provide them to the firm. He maintains clients' confidences. Driscoll has demonstrated a complete change since January 2000 in his interaction with co-workers and clients. He has demonstrated honesty and integrity in his employment as an investigator and paralegal. He also acts as a mentor to a young lawyers: he discusses ethical issues with them and has openly addressed what led to his suspension and the mistakes he made in his own practice. A member of the local legal community affirmed that in the event Driscoll needed employment in Denver, he would not hesitate to furnish Driscoll with a position as an attorney.

## II.  CONCLUSIONS OF LAW

C.R.C.P. 251.29(b) provides in relevant part:

> An attorney who has been suspended for a period longer than one year must file a petition with the Presiding Disciplinary Judge for reinstatement and must prove by clear and convincing evidence that the attorney has been rehabilitated, has complied with all applicable disciplinary orders and with all provisions of this chapter, and is fit to practice law.
>
> If the attorney remains suspended for five years or longer, reinstatement shall be

conditioned upon certification by the state board of law examiners of the attorney's successful completion, after the expiration of the period of suspension, of the examination for admission to practice law and upon a showing by the attorney of such other proof of professional competence as the Supreme Court or a Hearing Board may require. . . .

C.R.C.P. 251.29(c) further provides in part:

The petition for reinstatement must set forth:

(3) The facts other than passage of time and absence of additional misconduct upon which the petitioning attorney relies to establish that the attorney possesses all of the qualifications required of applicants for admission to the Bar of Colorado, fully considering the previous disciplinary action taken against the attorney;

(4) Evidence of compliance with all applicable disciplinary orders and with all provisions of this Chapter regarding actions required of suspended lawyers;

(5) Evidence of efforts to maintain professional competence through continuing legal education or otherwise during the period of suspension; and

(6) A statement of restitution made as ordered to any persons and the Colorado Attorneys' Fund for Client Protection and the source and amount of funds used to make restitution.

*People v. Klein,* 756 P.2d 1013, 1016 (Colo. 1988), interprets the language of the prior reinstatement rule, C.R.C.P. 241.22, and sets forth criteria which must be considered in reinstatement proceedings in order to evaluate an attorney's rehabilitation. *Klein* requires:

[A]ny determination of that issue [rehabilitation] must include consideration of numerous factors bearing on the [petitioner's] state of mind and ability, such as character, conduct since the imposition of the original discipline, professional competence, candor and sincerity, recommendations of other witnesses, present business pursuits of the [petitioner], the personal and community service aspects of the [petitioner's] life, and the [petitioner's] recogni-

tion of the seriousness of his previous misconduct.

■ An attorney who desires reinstatement after suspension must bear the burden of proving that he or she is (1) rehabilitated; (2) has complied with all applicable disciplinary orders and all provisions of the Colorado Rules of Civil Procedure relating to attorney discipline regarding actions required of suspended attorneys, and (3) is fit to practice law. All three of the elements of proof must be established before reinstatement may be authorized.

■ In *Driscoll,* 716 P.2d at 1088, the Supreme Court found that Driscoll's misconduct was "attributable to a serious condition of addiction to cocaine and alcohol." Dr. Ritvo opined in the reinstatement proceeding that the dishonesty inherent in Driscoll's prior professional misconduct was directly related to his substance abuse. Driscoll has evidenced rehabilitation from his past misconduct, and the dishonesty underlying it. He has maintained complete sobriety since January 4, 2000. He is committed to assist others in recovery, and is deeply involved in numerous outreach programs through AA and New Genesis to help others with substance abuse problems. He openly acknowledges and discloses his past addictive behavior. He takes full responsibility for his actions.

In the Order suspending Driscoll from the practice of law in 1992, the Supreme Court ordered him to comply with the predecessor of C.R.C.P. 251.28, pay restitution to Kroener's father, pay the costs of the disciplinary proceeding in the amount of $297.41, and comply with the terms of the Joint Stipulation made an Order of Court dated January 17, 1991. Driscoll complied with these conditions although it took some time do so: he filed the requisite affidavit with the Supreme Court, paid the costs in the amount of $297.41 arising from the disciplinary action. Driscoll did not comply with the portion of the Court's Order requiring him to adhere to the terms of the Joint Stipulation regarding sobriety. Driscoll did not do so because he understood that the Joint Stipulation did not apply during the time of suspension. The language used in that Order is not a model of

clarity and Driscoll's interpretation of it was not unreasonable.

Driscoll's tardy compliance with the Joint Stipulation was the result of his genuine misunderstanding of its provisions and does not detract from the abundance of evidence that he is rehabilitated and fit to practice law. In light of the fact that Driscoll did eventually comply fully with the Supreme Court's Order, and has demonstrated overwhelming evidence of rehabilitation to establish the other elements required by *Klein*, *supra*, the Hearing Board finds that Driscoll's substantial compliance with prior orders of the Court is sufficient to meet his burden of proof.

Driscoll has demonstrated current knowledge of Colorado law and a familiarity with the Colorado Rules of Professional Conduct by passing the Colorado Bar Exam in 2002, and by passing the Multistate Professional Responsibility Examination in 2003. In addition, Driscoll has remained active in the field of criminal law, working as an investigator and paralegal. He has kept his knowledge of criminal law practice current through that work. He has Also continued to remain abreast of the law by reading ethics opinions and law journals.

Driscoll has demonstrated that as a result of his rehabilitation, he has developed the integrity and honesty required of an attorney. His candid and forthright acknowledgement of His past misconduct, and the fact that he takes complete responsibility for his actions and feels remorse for those actions confirm to the Hearing Board that Driscoll would be an asset to the legal community. He has confirmed his commitment to the profession and to practicing responsibly, ethically, competently and with safety to the public.

However, the Hearing Board is charged first and foremost with protecting the public. In order to take precautions that Driscoll will not suffer a relapse, the Hearing Board orders Driscoll to undertake the following actions:

1. Driscoll shall henceforth abstain from the use of any alcohol and/or controlled substances during the period of time he is licensed to practice law in this state.

2. Driscoll shall participate in a random urinalysis program for detection of controlled substances and alcohol for a two-year period from the date of this Order. The frequency and timing of such random urinalysis testing shall be agreed to between the Office of Attorney Regulation Counsel and Driscoll. Driscoll shall make such arrangements necessary to insure that all results of such testing shall be provided to the Office of Attorney Regulation promptly.

3. Driscoll shall pay the costs of the proceeding in the amount of $4,019.88 within six (6) months of the date of this Order.

In the event Driscoll fails to comply promptly with conditions 1 and 2 set forth above, the People shall, upon notification, file a disability proceeding pursuant to C.R.C.P. 251.23 before the Office of the Presiding Disciplinary Judge. The filing of any disability proceeding shall not preclude the bringing of an any other form of proceeding otherwise authorized by law.

### III. ORDER OF REINSTATEMENT

IT IS THEREFORE ORDERED:

1. Robert J. Driscoll, attorney registration number 05729, is reinstated to the practice of law following his being sworn in.

2. Driscoll may appear before the Presiding Disciplinary Judge or the Board of Law Examiners to take the oath of admission.

3. Prior to taking the oath of admission, Driscoll shall tender the $195.00 annual attorney registration fee to the Office of Attorney Registration and complete the requisite attorney registration form and a COLTAF form.